# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:15-cr-128-1 |
| Plaintiff, | : | Judge Thomas M. Rose |
| v. | : | |
| JOSEPH R. GRAY, | : | |
| Defendant. | : | |

___

### ENTRY AND ORDER DENYING DEFENDANT JOSEPH R. GRAY'S MOTION TO SUPPRESS (DOC. 59)
___

Under a thirty-seven count Indictment, Defendant Joseph R. Gray ("Gray") and six co-defendants were charged with engaging in federal food stamp fraud through a door-to-door retail meat distributor called Butcher Shop Food Distributors, LLC ("the Butcher Shop"). (Doc. 22.) Gray was indicted on Counts 1 through 31, which included alleged conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); conspiracy to engage in federal food stamp (hereinafter referred to as the Supplemental Nutrition Program or "SNAP") fraud; theft of U.S. Government Property and wire fraud in violation of 18 U.S.C. §§ 371 and 1349; wire fraud in violation of 18 U.S.C. § 1343; and SNAP benefits fraud in violation of 7 U.S.C. § 2024(b). This matter is set for trial on September 19, 2016.

Now pending before the Court is Gray's Motion to Suppress. (Doc. 59.) The Court held hearings on the Motion to Suppress on March 22, 2016 and April 12, 2016. The parties have submitted post-hearing supplemental memoranda and the Motion is now ripe for review. (Doc. 96, 105, 109.) For the reasons stated below, the Motion to Suppress is **DENIED.**

## I. BACKGROUND

In March 2015, the Southern District of Ohio Financial Crimes Task Force ("Task Force") instituted an investigation into three separate southwestern Ohio door-to-door retail meat distributors who were suspected of engaging in federal food stamp fraud. Specifically, the Task Force suspected that individuals were unlawfully exchanging SNAP electronic benefit transfer ("EBT") cards for items such as cash and drugs. One of the targeted businesses was the Butcher Shop in Fairfield, Ohio. Through the investigation, the Task Force determined that Gray owned the Butcher Shop.

On August 20, 2015, Special Agent ("SA") Gregory E. Engelhard of the U.S. Department of Agriculture ("USDA"), Office of Inspector General applied for two search warrants covering Gray's residence in Hamilton, Ohio and the Butcher Shop business premises. After reviewing the applications and SA Engelhard's supporting affidavit, Magistrate Judge Michael R. Newman found probable cause to issue both search warrants. The warrants were executed on August 26, 2015. On September 24, 2015, a Federal Grand Jury sitting in Dayton, Ohio returned a 37 count indictment against Gray and six co-defendants, all of whom were allegedly connected to, and/or employed by, the Butcher Shop. Gray was specifically charged with Counts 1 through 31 of the Indictment.

## II. LEGAL STANDARD

The Fourth Amendment to the United States Constitution protects the rights of individuals against unreasonable searches and seizures. *United States v. Ganias*, 755 F.3d 125, 133 (6th Cir. 2014). A search occurs when the Government acquires information by either "physically intruding on persons, houses, papers, or effects" or otherwise invades an area in which the individual has a reasonable expectation of privacy. *Id.* (citing *Florida v. Jardines*,

133 S. Ct. 1409, 1414 (2013)). "A seizure occurs when the Government interferes in some meaningful way with the individual's possession of property." *Id.* (citing *United States v. Jones*, 132 S. Ct. 945 n.5 (2012)). The party seeking suppression of evidence obtained by a search has the burden of proving that the search was unlawful. *United States v. Blakeney*, 942 F.2d 1001, 1014 (6th Cir. 1991).

A search warrant will issue only if "(1) the Government establishes probable cause to believe the search will uncover evidence of a specified crime; and (2) the warrant states with particularity the areas to be searched and the items to be seized." *Ganias*, 755 F.3d at 134. Probable cause "is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The Supreme Court has opined that:

> Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision [whether to issue a warrant]. While an effort to fix some general, numerically precise degree of certainty corresponding to "probable cause" may not be helpful, it is clear that "only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause."

*Gates*, 462 U.S. at 235 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). Accordingly, the magistrate judge's task "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238-39. When reviewing the magistrate judge's decision, this Court must determine only whether there was a "substantial basis" for the finding that probable cause existed. *Gates*, 462 U.S. at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). "The ultimate touchstone of the Fourth Amendment is reasonableness." *Ganias*, 755 F.3d at 134 (citing *Missouri v. McNeely*, 133 S. Ct.

1552, 1569 (2013)).

### III. ANALYSIS

Gray makes four arguments in his Motion to Suppress: (1) that the search warrants issued for his residence and business were not supported by probable cause as required by the Fourth Amendment; (2) that the applications for the search warrants failed to establish a factual nexus between the alleged criminal activities and the locations to be searched; (3) the search warrants violated the Fourth Amendment because they were overly broad; and (4) the affidavit supporting the search warrants omitted material information, which, if included, would have demonstrated that no probable cause existed for issuance of the warrants. The Court addresses each of these arguments in turn below.

**A. Whether Probable Cause Existed For Issuance Of The Search Warrants**

The applications to search Gray's residence and the Butcher Shop's business premises were supported by the affidavit of SA Engelhard. Upon review, SA Engelhard's affidavit provides a substantial basis for the Magistrate Judge's finding of probable cause to issue both warrants. Among the facts in the affidavit supporting the finding of probable cause are:

(1) In March 2014, a confidential informant provided information found to be credible, trustworthy and reliable that individuals associated with the Butcher Shop were actively engaged in illegal SNAP/EBT transactions in exchange for cash (Doc. 75-1 at ¶ 8);

(2) Gray is owner, manager, and employee of the Butcher Shop (*id.* at ¶¶ 9-12);

(3) On May 16, 2013, U.S. Department of Agriculture/Food and Nutrition Service ("FNS") officials provided Gray a detailed SNAP/EBT training manual and personal briefing concerning the SNAP rules and requirements (*id.* at ¶ 13);

(4) During this briefing, Gray indicated that he was the only full-time employee of the Butcher Shop and that he had eight delivery truck drivers who operated as independent contractors (*id.*);

(5) SNAP rules specifically prohibited independent contractors from processing,

accepting or completing SNAP transactions (*id.*);

(6) Gray agreed, as owner of the Butcher Shop, to be held liable for all illegal or fraudulent SNAP related activities committed by employees or representatives (*id.* at ¶ 14);

(7) A reliable and trustworthy confidential informant conducted at least 32 illegal transactions with various Butcher Shop delivery drivers or representatives (*id.* at ¶¶ 49-50);

(8) Investigators determined that the approximately 440 SNAP/EBT transactions and $19,452.09 in SNAP redemptions that the Butcher Shop completed per month were disproportionate to the average 96 SNAP/EBT transactions and $4,763.32 in SNAP redemptions per month completed by comparable retail stores (*id.* at ¶¶ 18, 51-53);

(9) Gray and his wife personally opened and maintained all Butcher Shop business bank accounts into which SNAP/EBT reimbursement monies were electronically deposited and subsequently withdrawn (*id.* at ¶ 15, 54-57);

(10) Law enforcement personnel removed discarded garbage left at the end of the driveway at Gray's residence that (a) confirmed that the address was his residence, (b) contained a credit card offer to the owner of the Butcher Shop and a cellular phone containing a text message about the purchases of "stamps" (referring to food stamps), and (c) contained business correspondence and an invoice related to the operation of the Butcher Shop (*id.* at ¶¶ 40, 48); and

(11) Based on SA Engelhard's experience and participation in financial investigations, and based upon the experience and knowledge of other agents and officers of the Task Force, it was typical of SNAP/EBT fraud suspects like Gray to store and conceal relevant business records and criminal proceeds at their residence (*id*. at ¶ 60).

These facts in SA Engelhard's affidavit constitute a substantial basis for the Magistrate Judge's finding of probable cause to search both the Butcher Shop and Gray's residence.

Gray argues that the affidavit does not establish probable cause because Gray was not present for any of the alleged illegal transactions between the informant and delivery truck drivers. Even considering this fact, however, the affidavit still establishes a fair probability that evidence of SNAP/EBT fraud would be found at the Butcher Shop and Gray's residence. The illegal transactions were completed using SNAP/EBT transactions that were run through the

5

Butcher Shop as meat sales and ultimately federal funds from the SNAP program were deposited into a bank account opened and controlled by Gray and his wife for the Butcher Shop business. It is a reasonable, common sense judgment to conclude that the owner and manager of the Butcher Shop was involved in the illegal transactions or, at the very least, that evidence of the laundering of the proceeds of the illegal transactions could be found in the Butcher Shop's books and records. The affidavit established that those records were likely to be found at the Butcher Shop's office and Gray's residence.

Gray also argues that simply owning a business and applying for a license to accept SNAP/EBT cards does not make it more likely than not that the owner is involved in the illegal activities of the business's employees and independent contractors. (Doc. 109 at 3.) The Court agrees that simply owning a business and applying for a SNAP/EBT license alone would not necessarily make it more likely than not that the owner was involved in the illegal activities of his employees. Here, however, that is not the only evidence in the affidavit. If the affidavit disclosed only illegal transactions that employees or independent contractors conducted on the side, without the involvement of SNAP/EBT cards or processing the transactions as meat sales, Gray's argument would have more merit. Instead, the affidavit describes crimes that were run through the Butcher Shop and used funds from SNAP/EBT cards.

Gray also takes issue with the comparison between the Butcher Shop's sales and SNAP proceeds with those of comparable businesses. Gray argues that the comparison is flawed because it is based on the incorrect assumption that the Butcher Shop operated in only five counties within a fifty mile radius. At the hearing, Gray asserts that it was established that the Butcher Shop operated in additional counties and far beyond the alleged fifty mile radius. (Doc. 109 at 3.) Even if the comparison was flawed because the Butcher Shop covered a

greater geographical area than asserted in the affidavit, the relative number of sales and SNAP proceeds earned by the Butcher Shop still supports the finding of probable cause.  It shows that the Butcher Shop was conducting a large number of SNAP/EBT transactions.  That fact combined with the knowledge that many of those transactions involved illegal activities raises suspicion that a significant portion of the Butcher Shop's profits were illegally obtained.  It is reasonable to conclude that evidence of the crimes may be found in the Butcher Shop's attempts to account for the revenue from illegal activities in its books and records.

The Court finds that SA Engelhard's affidavit contains a substantial basis to support a finding of probable cause for the issuance of both search warrants.

### B. Whether The Applications For Search Warrants Established Factual Nexus With Locations To Be Searched

Gray argues that the affidavit supporting the search warrants failed to establish a nexus between the places to be searched and probable evidence of criminal activity.   The Sixth Circuit has held that a nexus with the physical location to be searched must be established; it is not enough that "the owner of the property is suspected of crime."  *United States v. McPherson*, 469 F.3d 518, 524 (6th Cir. 2006) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). "A magistrate may infer a nexus between a suspect and his residence, depending upon the 'type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places.'"  *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (quoting *United States v. Savoca*, 761 F.2d 292, 298 (6th Cir. 1985)).   In reviewing an application for a search warrant, courts are instructed to consider the totality of the circumstances and may afford "considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and [the courts are] entitled to draw reasonable inferences about

where evidence is likely to be kept, based on the nature of the crime and type of offense." *Id.* (quoting *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996)).

SA Engelhard's affidavit established the required nexus between Gray's residence and the Butcher Shop's premises. As discussed above, law enforcement personnel conducted "trash pulls" at Gray's residence and recovered evidence suggesting that he kept business records at his home and that illegal activity (related to the crimes charged) may have been occurring at the residence. The Court has already discussed why it was reasonable to conclude that evidence of the illegal activity would be found in the Butcher Shop's books and records, so no further elaboration on that issue is required here.

### C. Whether Search Warrants Were Overly Broad

Gray also argues that his Motion to Suppress should be granted because the breadth and scope of the search warrants violated Fourth Amendment particularity requirements. In particular, Gray argues that warrants were unconstitutional because they permitted a general search of computers with no restrictions regarding the examination of personal items unrelated to the alleged criminal activity. (Doc. 59 at 5).

The Fourth Amendment requires that a warrant describe with "particular[ity] . . . the place to be searched and the persons or things to be seized." "The purpose of this particularity requirement is to prevent the use of general warrants authorizing wide-ranging rummaging searches in violation of the Constitution's proscription against unreasonable searches and seizures." *United States v. Logan*, 2505 F.3d 350, 364-65 (6th Cir. 2001). Whether a warrant lacks the necessary particularity is determined on a case-by-case basis. *Id.* at 365; *see also United States v. Blair*, 214 F.3d 690, 697 (6th Cir. 2000). If a search warrant is determined to be overbroad, then the Court should invalidate the overbroad portions of the warrant and suppress

the evidence seized pursuant to those portions. *See United States v. Greene*, 250 F.3d 471, 476-77 (6th Cir. 2001).

The Sixth Circuit has held that, "granting the Government a *carte blanche* to search every file on [a computer] hard drive impermissibly transforms a limited search into a general one." *United States v. Richards*, 659 F.3d 527, 538 (6th Cir. 2011) (quoting *United States v. Stabile*, 633 F.3d 219, 237 (3d Cir.2011)). However, the Sixth Circuit also has held with regard to computers that "it is folly for a search warrant to attempt to structure the mechanics of the search and a warrant imposing such limits would unduly restrict legitimate search objectives." *Id*. (quoting *United States v. Burgess*, 576 F.3d 1078, 1092 (10th Cir. 2009)). The Sixth Circuit agreed with the Tenth Circuit's reasoning in *Burgess*, which stated:

> One would not ordinarily expect a warrant to search filing cabinets for evidence of drug activity to prospectively restrict the search to "file cabinets in the basement" or to file folders labeled "Meth Lab" or "Customers." And there is no reason to so limit computer searches. But that is not to say methodology is irrelevant.

*Burgess*, 576 F.3d at 1094. The Tenth Circuit further held "[a]s the description of such places and things becomes more general, the method by which the search is executed become[s] more important—the search method must be tailored to meet allowed ends." *Id*. The *Burgess* Court, however, noted "there may be no practical substitute for actually looking in many (perhaps all) folders and sometimes at the documents contained within those folders…." *Id*.

Here, Attachment B to SA Engelhard's supporting affidavit contains a clear and precise list of the items to be searched at the two locations. The officers were limited to searches for items related to the operation of the Butcher Shop and the suspected SNAP/EBT fraud. It would have been "folly" for SA Engelhard to attempt to dictate the precise mechanics of the search of the computers and other files in light of the legitimate objects of the search. The

9

Court finds that the warrants were sufficiently particularized to satisfy Fourth Amendment standards.

   D. **Whether The Supporting Affidavit Omitted Material Information That Would Have Undermined The Finding Of Probable Cause**

Gray argues that SA Engelhard excluded material information from his supporting affidavit that, had it been included, would have undermined the Magistrate Judge's ability to find the existence of probable cause for issuance of the warrants.  Specifically, Gray argues that the following facts were omitted from the affidavit:  (1) that when an informant tried to engage in an illegal SNAP/EBT transaction with Gray personally, he refused to do so, (2) that the delivery drivers engaging in illegal SNAP/EBT transactions attempted to hide their illegal activity from Butcher Shop management, and (3) that a pole camera in place at the Butcher Shop did not record any illegal transactions on the premises.  (Doc. 59 at 4-5; Doc. 96 at 3-7.)

Gray argues that the Court should consider the excluded information when determining whether probable cause existed for issuance of the warrants under *Franks v. Delaware*, 438 U.S. 154 (1978).  In *Franks*, the Supreme Court held that the Fourth Amendment guarantees criminal defendants the right to a hearing to challenge the validity of a warrant affidavit. *Franks*, 438 U.S. at 171–72.  "A defendant is entitled to a *Franks* hearing if he: 1) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) proves that the false statement or material omission is necessary to the probable cause finding in the affidavit."  *United States v. Rose*, 714 F.3d 362, 70 (6th Cir. 2013) (citing *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978)).  Although material omissions are not immune from inquiry under *Franks*, the Sixth Circuit has recognized that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than

one which affirmatively includes false information. *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990). This is so because an allegation of omission "'potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit.'" *Id.* (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)).

If, after a *Franks* hearing, the Court determines that probable cause still would have existed, despite exclusion of the false statement or inclusion of the omitted information, then the evidence seized pursuant to the search warrant will not be suppressed. *United States v. Zimmer*, 14 F.3d 286, 288-89 (6th Cir. 1994).

Here, Gray does not argue that there were false statements included in the warrant affidavit, but that material information was omitted. Gray's argument fails because he has not carried his burden of showing that the omitted information was material to the determination of probable cause or that it was omitted intentionally to mislead the Magistrate Judge or with reckless disregard for the truth.

At the April 12, 2016 hearing, Gray highlighted eight videotaped transactions between the undercover informant and Butcher Shop delivery truck drivers. (Doc. 86, Def. Ex. B (identified at the hearing as Items 208, 209, 211, 213, 216, 217, 218 and 220).) During the transactions, the delivery truck drivers can be heard telling the informant to keep certain incriminating information from the "manager" or to tell the "manager," if he were to call the informant, that she purchased only meat. Gray argues that such statements refer to him, as the manager of the Butcher Shop, and therefore tend to show that the delivery truck drivers' illegal activity was hidden from him.

SA Engelhard testified at the hearing, however, that there was uncertainty during the

investigation regarding who the "manager" referred to in the transactions might be. (Doc. 86 at 33-35.) This uncertainty was created by the fact that investigators did not know who was involved in the management of the Butcher Shop and the fact that the delivery truck drivers changed employers often. (*Id.*) SA Engelhard explained that the investigation targeted three different meat delivery businesses, and that delivery truck drivers were quick to "jump ship" and join a different company or represent more than one company at a time. (*Id.* at 34-35.)

SA Engelhard also testified that, in his experience in these types of investigations, delivery people keep information about their customers and transactions "close to the vest" because they do not want other salespeople to know their business. (*Id.* at 33.) Thus, the fact that the Butcher Shop delivery truck drivers kept information from their manager did not necessarily mean that their manager was not involved in the illegal activity at some level.

Other comments by the delivery truck drivers are also subject to varying interpretations. For example, in an April 13, 2015 transaction, the driver, co-defendant Francis Racicot, tells the informant that he wants to be careful because "that last time he was flippin' out a little." (Def. Ex. B). Gray contends that this statement refers to him "flippin' out." (Doc. 96 at 4.) To explain the difference between the $700 price paid by the informant and the $1,300 value of the meat, Racicot tells the informant, "I'll just tell him you bought three cases and got three free." (Def. Ex. B.) These statements indicate that Racicot was hiding information from the manager, but the reason for hiding the information is not clear. It is possible—although not probable—that Gray was oblivious to the illegal activity being run through his Butcher Shop business via SNAP/EBT transactions and which deposited ill-gotten federal funds into a bank account that Gray maintained. However, it is also possible, as just one example, that delivery truck drivers were being reckless in their participation in the SNAP/EBT fraud, despite their

manager's instructions to use more discretion, and tried to hide their reckless transactions from him.

In sum, the Court does not find the fact that the delivery truck drivers were hiding information from their manager to be so clearly exculpatory that its omission was reckless as to the truth of the assertions in the warrant affidavit. In other words, the omissions were not material and SA Engelhard cannot be found to have intentionally or recklessly omitted them for purposes of misleading the Magistrate Judge.

The other two items that Gray argues should not have been omitted from the warrant affidavit—that he personally refused to engage in an illegal transaction and that the pole camera at the Butcher Shop did not capture any illegal activity—also were not material to the finding of probable cause. As to the attempted transaction with Gray personally, SA Engelhard testified that it was the only instance when someone attempted to engage in an illegal SNAP/EBT transaction inside the Butcher Shop. (Doc. 88 at 13.) Gray declined to do so and told the informant that it would be a federal offense for both of them if he were to provide cash for SNAP benefits. Again, the Court does not view this failed transaction as significant enough to undermine the Magistrate Judge's finding of probable cause based on the facts discussed earlier in this opinion. Those facts established a strong connection between the alleged crime, SNAP/EBT fraud, and the Butcher Shop. In addition, there was only one failed transaction, not a series of failed transactions, and it too is subject to varying interpretations. As Gray argues, perhaps he was not involved in the SNAP/EBT fraud; alternatively, perhaps he had the good sense to maintain a safe distance between himself and the illegal transactions. The fact that the pole camera installed at the Butcher Shop did not capture any illegal activity is not material for the same reasons.

## IV. <u>CONCLUSION</u>

Gray's Motion to Suppress (Doc. 59) is **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, August 26, 2016.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
